| | |
|---|---|
| **NICOLE WHITE,** a/k/a NIKKI WHITE, <br><br> **Plaintiff,** <br><br> v. <br><br> **GANNETTE CO., INC.,** a Delaware corporation doing business in North Carolina as the Citizen-Times**,** <br><br> **Defendant.** | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> **MEMORANDUM AND RECOMMENDATION** |

This matter is before the Court on Defendant's[1] Motion to Dismiss (# 4) pursuant to Federal Rule of Civil Procedure 12(b)(6). The issues have been fully briefed, and the matter is now ripe for ruling. For the reasons addressed below, the Court will recommend that Defendant's Motion to Dismiss be GRANTED.

**I. Procedural Background**

On August 29, 2017, Nicole White a/k/a Nikki White ("Plaintiff") initiated this action in the General Court of Justice, Superior Court Division, in Haywood County, North Carolina. On October 5, 2017, Defendant timely removed the action to this Court on the

---

[1] Defendant represents that Plaintiff was actually employed by the Asheville Citizen-Times, a division of Gannett GP Media, Inc., a wholly-owned subsidiary of Gannett Co., Inc. Def.'s Mem. Supp. (# 5) at 1.

basis of diversity jurisdiction.[2,3] (# 1.)

Plaintiff purports to allege the following three causes of action: (1) wrongful discharge in violation of public policy, (2) negligent supervision and retention, and (3) intentional infliction of emotional distress ("IIED"). See Compl. (# 1, Ex. B).

## II. Factual Background[4]

The facts, viewed in a light most favorable to Plaintiff, are the following: Plaintiff has worked as a sales representative for at least 21 years. Id. ¶ 8. In her role as a sales representative, Plaintiff was responsible for selling digital ads, websites, and other marketing media. Id.

Around April 2015, Plaintiff started working for Defendant. Id. ¶ 9. Plaintiff was employed as a sales representative with Defendant and its subsidiary, the Citizen-Times. Id. ¶ 7.

Plaintiff did not have any problems with the director of sales until Vivian Marciano ("Marciano") was hired. Id. ¶ 9. During the time that Plaintiff was working for Defendant, Marciano was hired as the new manager and director of the sales department. Id. ¶ 10.

---

[2] A federal district court has diversity jurisdiction in civil actions between "citizens of different States" and "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a); see Trotman v. C.S.H., No. 3:17CV716, 2018 WL 701276, at *4 (E.D. Va. Feb. 2, 2018). When a case based on diversity jurisdiction is not initiated in federal court, a court may exercise jurisdiction over the case upon proper removal to federal court. 28 U.S.C. §§ 1441(a), 1446.

[3] Defendant represents that it filed its Notice of Removal within 30 days after it received service of the Complaint. See 28 U.S.C. § 1446(b). Not. Rem. (# 1 at ¶ 4).

[4] When evaluating this motion to dismiss, the Court must accept Plaintiff's alleged facts as true and view them in a light most favorable to her. See Brooks v. City of Winston-Salem, N.C., 85 F.3d 178, 181 (4th Cir. 1996). In this case, the facts are derived from the Complaint (# 1, Ex. B), which was originally filed in State court.

Marciano was Defendant's employee and agent; therefore, Defendant is responsible for Marciano's actions. Id. ¶ 11. From the time Marciano was hired, she targeted Plaintiff by making verbal threats to her, which included the following attacks:

a. The way Plaintiff dressed;

b. Plaintiff's alleged Human Resources file. (Upon information and belief, there were no complaints or warnings against Plaintiff in her file);

c. Stating Plaintiff was working on getting herself fired;

d. Getting more Human Resources issues brought forth;

e. Firing Plaintiff if she wanted to;

f. Accusing Plaintiff of unethical sales practices;

g. Creating a competitive work environment because Plaintiff was a woman and questioning her ability to do her job;

h. Creating a generally hostile work environment with verbal abuse and threats; and

i. Playing mind games to insinuate that Marciano was setting Plaintiff up to lose her job.

Id. ¶ 12.

Marciano discriminated against Plaintiff based upon her sex. Id. ¶ 13. For example, in an effort to force Plaintiff to resign, Marciano stated that she previously managed a woman who slept with both men and women and who "ran tracks over my face" and insinuated Plaintiff was similar and would be treated as such. Id.

Plaintiff was also discriminated against based upon her political beliefs. Id. ¶ 14. For example, during the November 2016 election, Plaintiff was called by David Foster and

advised not to go into the Asheville office the day after the election. Id. Additionally, there had been prior issues with political debates in the office. Id. Plaintiff was singled out because her beliefs were opposed to those held by her coworkers. Id. Plaintiff's political beliefs were different than most of the other employees at the Citizen-Times, and Plaintiff was singled out and treated different to get her to resign. Id. ¶ 15.

Plaintiff performed her job in a professional manner, which was up to similar standards within the community and profession. Id. ¶ 16. Plaintiff attempted to protect her interests by contacting Defendant's Human Resources department at the Citizen-Times to submit a grievance regarding Marciano's actions. Id. ¶ 17.

Plaintiff's efforts to utilize the Human Resources department were generally ignored, and Marciano's harassment was allowed to continue. Id. ¶ 18. Marciano retaliated against Plaintiff for her efforts to get help from Human Resources. Id. ¶ 19.

Before Plaintiff raised her concerns with Human Resources and Marciano, Plaintiff was prevented from going into the field and performing her job as it customarily would be done. Id. ¶ 20. Rather, Plaintiff was forced into a position where she could lose sales and be left out of the loop when it came to office meetings. Id. ¶ 20. These actions were done by Marciano, who referred to this as grooming Plaintiff. Id.

On February 16, 2017, Plaintiff was fired. Id. ¶ 21. Plaintiff was terminated after she refused to resign. Id. ¶ 24. On February 20, 2017, Marciano was fired. Id. ¶ 22. It is believed that Marciano was fired, in part, due to the way she treated Plaintiff. Id.

**II.     Legal Standard**

The central issue for resolving a Federal Rule of Civil Procedure 12(b)(6) motion is whether the complaint states a plausible claim for relief. See Francis v. Giacomelli, 588 F.3d 186, 189 (4th Cir. 2009). In considering a defendant's motion, the court accepts the allegations in the complaint as true and construes them in the light most favorable to plaintiff. Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009); Giacomelli, 588 F.3d at 192. Although a court accepts well-pled facts as true, it is not required to accept "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Consumeraffairs.com, 591 F.3d at 255; see Giacomelli, 588 F.3d at 192.

The claims need not contain "detailed factual allegations," but must contain sufficient factual allegations to suggest the required elements of a cause of action. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see Consumeraffairs.com, 591 F.3d at 256. "[A] formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Nor will mere labels and legal conclusions suffice. Id. Federal Rule of Civil Procedure 8 "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

The complaint is required to contain "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; see Consumeraffairs.com, 591 F.3d at 255. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; accord Consumeraffairs.com, 591 F.3d at 255. The mere possibility that a defendant acted unlawfully is not sufficient for a claim to survive a motion

to dismiss. Consumeraffairs.com, 591 F.3d at 256; Giacomelli, 588 F.3d at 193. Ultimately, the well-pled factual allegations must move a plaintiff's claim from possible to plausible. Twombly, 550 U.S. at 570; Consumeraffairs.com, 591 F.3d at 256.

## III. Discussion

### A. Plaintiff has failed to state a claim for wrongful discharge in violation of public policy.

Defendant initially argues that Plaintiff has not alleged a valid claim for wrongful discharge in violation of public policy. Def.'s Mem. Supp. (# 5) at 3-9. In particular, Defendant contends: (1) North Carolina does not recognize wrongful discharge claims based on retaliation; (2) Plaintiff has alleged no facts demonstrating that her termination was because she failed to engage in unlawful conduct at Defendant's request or because she opposed unlawful activity of Defendant; and (3) Plaintiff has failed to allege facts showing a causal link between her sex, or any other legally-protected characteristic, and the termination of her employment. Id. at 5-9. The Court will address each argument in turn.

In Count One, Plaintiff alleges wrongful discharge in violation of North Carolina public policy. See Compl. (# 1, Ex. B) ¶¶ 26-31. North Carolina is an at-will employment state, and without a contract to the contrary, the relationship between the employer and employee is presumed to be terminable by either party at any time. Wilkes v. Argueta, No. 1:16-CV-260, 2017 WL 1215749, at *8 (M.D.N.C. Mar. 31, 2017) (quoting Kurtzman v. Applied Analytical Indus., Inc., 493 S.E.2d 420, 422 (N.C. 1997)). One exception to the at-will employment doctrine is the wrongful discharge in violation of North Carolina public

6

policy. Id. (citing Coman v. Thomas Mfg. Co., 381 S.E.2d 445, 447 (N.C. 1989)). In order to state a claim for wrongful discharge in violation of public policy in North Carolina, a plaintiff must "plead plausible facts that, if later proved, would show that dismissal occurred for a reason that violates public policy." Parker v. Curtiss-Wright Corp., No. 3:17-CV-00639-MOC-DCK, 2018 WL 1652098, at *7 (W.D.N.C. April 5, 2018) (citing Imes v. City of Asheville, 594 S.E.2d 397 (N.C. Ct. App. 2004)).

In pertinent part, Plaintiff alleges the following: (a) Plaintiff was Defendant's at-will employee; (b) Plaintiff engaged in legally-protected activity, refused to engage in unlawful conduct at the employer's request, opposed some activity by the employer that was contrary to law, or was a member of a protected class; (c) Plaintiff was discharged from the employment; (d) Plaintiff was discharged because of engaging in protected activity, refusal to engage in unlawful conduct at the employer's request, her opposition to some employer activity that was contrary to law, or her membership in a protected class; and (e) Plaintiff was injured or damaged as a proximate result of the wrongful action. Compl. (# 1, Ex. B) ¶¶ 26-31.

Plaintiff fails to identify specifically which public policy was violated. See id. The only public policy identified in Plaintiff's Complaint is the North Carolina Equal Employment Practices Act (the "NCEEPA"), N.C.G.S. § 143-422.2. Id. ¶ 25. The NCEEPA does not provide support for Plaintiff's claim for a least two reasons: (1) it does not provide protection for retaliatory discharge; and (2) Plaintiff has failed to sufficiently allege facts showing that her termination was related to a protected characteristic.

### 1. North Carolina does not recognize wrongful discharge claims based on retaliation.

North Carolina law does not create a private right of action for wrongful discharge based on retaliation. McLean v. Patten Communities, Inc., 332 F.3d 714, 719 (4th Cir. 2003); see Ricketts v. Logics, LLC, No. 5:15-CV-293-D, 2017 WL 4293406, at *8 (E.D.N.C. Sept. 17, 2017) ("Section 143-422.2 does not create a private right of action for retaliation or provide a source of public policy concerning retaliation."); Jackson v. TYCO Electronics Corp., No. 5:16-CV-873-FL, 2017 WL 2266851, at *2 (E.D.N.C. May 23, 2017) ("[T]he Fourth Circuit has held that there is no private right of action under North Carolina law for retaliation under [NCEEPA].") (quotation omitted)); Gibson v. Corning, Inc., No. 5:14-CV-105-BO, 2015 WL 1880188, at *9 (E.D.N.C. Apr. 13, 2015) ("[A]s North Carolina law does not create a private right of action for retaliation, plaintiff cannot assert that he was wrongfully terminated in relation for complaining about an EEPA-protected category."); Mullis v. Mechanics & Farmers Bank, 994 F. Supp. 680, 688 (M.D.N.C. 1997) ("[N]o North Carolina court has interpreted the NCEEPA to include a claim for discharge in retaliation for complaining about discriminatory employment practices."). Accordingly, the first basis for a public policy wrongful discharge claim must fail.

### 2. Plaintiff has not alleged facts demonstrating that her termination was caused by her failure to engage in unlawful conduct at Defendant's request or because she opposed unlawful activity by Defendant.

Next, the Court concludes that Plaintiff has failed to allege any facts that would support a claim that she was discharged for failing to engage in unlawful conduct at her

8

Case 1:17-cv-00277-MR-DLH   Document 8   Filed 05/29/18   Page 8 of 17

employer's request. In particular, Plaintiff has not alleged facts suggesting that Defendant requested that she undertake any unlawful conduct or that she refused to allege any facts to suggest that she opposed an activity by Defendant that was contrary to law. Additionally, Plaintiff has failed to refer this Court to any express statements in State or federal law that identify the public policy supporting her allegations. See Ricketts, 2017 WL 4293406, at *7 ("To prove a claim of wrongful discharge in violation of North Carolina public policy, a plaintiff must identity and rely upon a specific North Carolina statute or North Carolina constitution provision stating North Carolina's public policy.") (emphasis added)); Howard v. College of the Albemarle, 262 F. Supp. 3d 322, 337 (E.D.N.C. 2017) ("The Supreme Court of North Carolina requires a plaintiff claiming wrongful discharge in violation of North Carolina public policy to allege specific conduct by a defendant that violated a specific expression of North Carolina public policy in a specific North Carolina statute or a specific provision in the North Carolina constitution.") (internal quotation omitted)). Consequently, the second and third bases for a public policy wrongful discharge claim must fail.

### 3. Plaintiff has failed to allege facts showing a causal link between her sex, or another legally-protected characteristic, and her termination.

The Court will now address Plaintiff's wrongful discharge claim, to the extent she has alleged discharge because of her membership in a protected class. Plaintiff asserts, in a conclusory manner, that her former supervisor "discriminated against her based upon her sex in an effort to force her to resign in that [the supervisor] stated she previously managed a woman who slept with both men and women, who 'ran tracks over my face', thereby

9

insinuating the Plaintiff was similar and would be treated as such." Compl. (# 1, Ex. B) ¶ 13.

> N.C. Gen. Stat. § 143-422.2 provides:
>
> (a) It is the public policy of this State <u>to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race, religion, color, national origin, age, sex or handicap</u> by employers which regularly employ 15 or more employees.
>
> (b) It is recognized that the practice of denying employment opportunity and discriminating in terms of employment foments domestic strife and unrest, deprives the State of the fullest utilization of its capacities for advancement and development, and substantially and adversely affects the interests of employees, employers, and the public in general.

N.C. Gen. Stat. § 143.422.2 (emphasis added); <u>see</u> <u>Ricketts</u>, 2017 WL 4293406, at *8 n.2 (emphasis added).

In this case, Plaintiff has failed to allege facts suggesting that her termination was in any way related to any of the protected characteristics set forth § 143.422.2. Plaintiff's Complaint makes no attempt to link the alleged comment to her termination. <u>See</u> Compl. (# 1, Ex. B). Moreover, Plaintiff's Complaint does not plausibly support a contention that she was terminated <u>because of</u> her sex. <u>See</u> <u>id.</u>

Plaintiff also asserts that her termination was caused by the fact that she had different beliefs from her coworkers. <u>Id.</u> ¶ 14. The NCEEPA does not list "political affiliation" as one of the protected characteristics. Moreover, the Court is not aware of another statute or constitutional provision that would provide protection on that basis.

Plaintiff argues that her case is comparable to <u>Chambers v. Ashley Furniture Inc.</u>, No. 3:10CV362-RJC-DSC, 2010 WL 4977102, at *2 (W.D.N.C. Nov. 9, 2010). Pl.'s

10

Mem. Oppos. (# 6) at 5-6.  Chambers is factually distinguishable from the instant case.  In particular, in Chambers, the plaintiff alleged in her first amended complaint that the defendant-employer terminated her employment due to her race and gender.  2010 WL 4977102, at *9.  This makes Chambers distinguishable from the instant case because race and gender are protected characteristics.  See N.C. Gen. Stat. § 143-422.2(a).

Plaintiff also argues that her case is comparable to Moore v. Time Warner Cable, Inc., No. 3:09CV03-RLV-DCK, 2009 WL 3754225 (W.D.N.C. Nov. 5, 2009).  Pl.'s Mem. Oppos. (# 6) at 6-7.  Moore is also factually distinguishable from the instant case.  In Moore, the plaintiff alleged that she was terminated based on "religious discrimination." 2009 WL 3754225, at *3.  Religion is a protected characteristic.  See N.C. Gen. Stat. § 143-422.2(a).  The Court found that the plaintiff had stated a claim for wrongful discharge in violation of NCEEPA.  2009 WL 3754225, at *4.

In short, the Complaint in the instant case is devoid of facts that could plausibly suggest that Plaintiff was discharged in violation of the NCEEPA, or any other North Carolina public policy.[5]  Moreover, Plaintiff has failed to allege facts that would "raise a right to relief above the speculative level."  See Twombly, 550 U.S. at 555.  Accordingly, Plaintiff's wrongful discharge in violation of public policy claim must be dismissed.

**B.     Plaintiff's negligent supervision and retention claim fails as a matter of law.**

---

[5] See McLaughlin v. Bailey, 771 S.E.2d 570, 581 (N.C. Ct. App. 2015) ("Government employees generally are protected from termination because of their political viewpoints.").  In the instant case, Plaintiff was not a government employee.  See Compl. (# 1, Ex. B) ¶ 7.

Next, Defendant argues that Plaintiff's negligent supervision and retention claim fails as a matter of law. Def.'s Mem. Supp. (# 5) at 9-11. In particular, Defendant contends that Plaintiff has failed to provide sufficient facts to support her conclusory allegation that a "tort was committed against" her. Id. at 10 (citing Compl. (# 1, Ex. B) ¶ 33)). Defendant further contends that Plaintiff has failed to show that the tortfeasor was incompetent or unfit for the work she was hired to perform, and Defendant had actual or constructive notice of the tortfeasor's incompetency or unfitness. Id. at 10-11. Defendant concludes that Plaintiff's bare-boned allegations simply cannot withstand a Rule 12(b)(6) motion. Id. at 11.

In Count Two, Plaintiff alleges a claim for negligent supervision and retention. See Compl. (# 1, Ex. B) ¶¶ 32-37. To state a claim for negligent supervision and retention in North Carolina, a plaintiff must allege that: (1) the incompetent employee committed a tortious act resulting in injury to the plaintiff; and (2) prior to the tortious act, the employer knew or had reason to know of the employee's incompetency. Parker, 2018 WL 1652098, at *7; Smith v. First Nat. Bank, 202 F.3d 234, 250 (4th Cir. 2000) (citing Hogan v. Forsyth Country Club Co., 340 S.E.2d 116, 124 (N.C. Ct. App. 1986)). "Where there is no viable underlying [common law] tort, a plaintiff cannot state a negligent retention or supervision claim." Parker, 2018 WL 1652098, at *7 (citing Hartsell v. Duplex Prods., 123 F.3d 766, 774 (4th Cir. 1997)).

In the instant case, Plaintiff, in pertinent part has alleged: "A tort was committed against the Plaintiff." Compl. (# 1, Ex. B) ¶ 33. If Plaintiff is attempting to rely on her claim for wrongful discharge in violation of public policy, this claim fails for the reasons

12

addressed above. To the extent that Plaintiff is attempting to rely on her IIED claim, this claim fails for the reasons outlined below. See Parker, 2018 WL 1652098, at *8 (dismissing Plaintiff's negligent retention or supervision claim because it was not supported by a common law tort).

Plaintiff's negligent supervision and retention claim must also fail because she provides no facts regarding who she complained to or what she shared when she allegedly made a complaint about Marciano. See Compl. (# 1, Ex. B). Moreover, Plaintiff fails to suggest that Defendant was actually aware of any previous instances of inappropriate or discriminatory conduct by Marciano. See id.

Awareness by the employer is a prerequisite to stating a viable claim for negligent supervision and retention. See Smith, 202 F.3d at 250 (recognizing that to sustain a claim for negligent supervision or retention, the employer must know or had reason to know of the employee's incompetency); Hogan, 340 S.E.2d at 123 (holding that in order to hold an employer liable for negligent supervision or retention, a plaintiff must prove that the employer had reason to know of the employee's incompetency). Consequently, Plaintiff's negligent supervision and retention claim must be dismissed.

### C. Plaintiff's IIED claim fails as a matter of law.

Finally, Defendant argues that Plaintiff's IIED fails as a matter of law. Def.'s Mem. Supp. (# 5) at 11-17. In particular, Defendant contends: (1) Plaintiff failed to allege extreme or outrageous conduct; (2) Plaintiff failed to allege intentional conduct; and (3)

Plaintiff failed to sufficiently allege severe emotional distress.  Id.  The Court will address the first and third arguments in turn.[6]

In Count Three, Plaintiff alleges a claim for IIED.  See Compl. (# 1, Ex. B) ¶¶ 38-41.  In order to state a claim for IIED, a plaintiff must allege (a) extreme and outrageous conduct, (b) intended to cause severe emotional distress, (c) that did indeed cause severe emotional distress.  Mosk v. Gaston County, No. 3:17-CV-00177-RJC-DSC, 2018 WL 1566339, at *8 (W.D.N.C. Mar. 30, 2018) (citing Holloway v. Wachovia Bank & Trust Co., 452 S.E.2d 233, 240 (N.C. 1994)).

### 1. Plaintiff has failed to allege extreme and outrageous conduct.

"Conduct is extreme and outrageous when it exceeds all bounds usually tolerated by a decent society."  Cooper v. Smithfield Packing Co., Inc., --- Fed. App'x ---, 2018 WL 1151787, at *3 (4th Cir. 2018) (quoting Shreve v. Duke Power Co., 354 S.E.2d 357, 359 (N.C. Ct. App. 1987)); see Waddle v. Sparks, 414 S.E.2d 22, 27-28 (N.C. 1992) ("The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it.") (emphasis removed).  Determining whether conduct is extreme and outrageous is initially a question of law for the court.  Simmons v. Chemol Corp., 528 S.E.2d 368, 372 (N.C. Ct. App. 2000).  A plaintiff must plead such extreme and outrageous conduct with specificity.  Alexander v. Diversified Ace Servs. II, AJV, No. 1:11CV725, 2014 WL 502496, at *14 (M.D.N.C. Feb. 7, 2014).

---

[6] The first and third arguments raised by Defendant provide the strongest justification for the Court's decision.

14

North Carolina courts will rarely find that conduct is sufficiently extreme or outrageous in an employment setting. See Lamb v. Lowe's Companies, Inc., No. 5:17-CV-00028-RJC-DSC, 2018 WL 1185508, at *3 (W.D.N.C. Mar. 7, 2018) (citing Jackson v. Blue Dolphin Commc'ns of N.C., L.L.C., 226 F. Supp.2d 785, 794 (W.D.N.C. 2002)). In fact, IIED claims that have been successful in the employment context have generally been characterized by "sexual advances, obscene language, and inappropriate touching." Id. (quoting Gauthier v. Shaw Grp., Inc., No. 3:12-CV-00274-GCM, 2012 WL 6043012, at *7 (W.D.N.C. 2012)).

In pertinent part, Plaintiff alleges: "The Defendant negligently engaged in extreme and outrageous conduct." Compl. (# 1, Ex. B) ¶ 39. "It was reasonably foreseeable that such conduct would cause the Plaintiff severe emotional distress." Id. ¶ 40. "Her conduct did in fact cause severe emotional distress." Id. ¶ 41.

Plaintiff's conclusory allegations fail to sufficiently allege an IIED claim. See Thomas v. Goodwill Industries of the Southern Piedmont, Inc., No. 3:13-CV-00005-MOC-DCK, 2013 WL 3816614, at *2 (W.D.N.C. July 22, 2013) (holding that the plaintiff's assertions failed to state an IIED claim because they were conclusory and not supported by allegations of plausible facts). Moreover, Plaintiff has failed to assert facts that are sufficiently "extreme and outrageous." See Thomas v. N. Telecom, Inc., 157 F. Supp. 2d 627, 635-35 (M.D.N.C. 2000) (holding that a hostile work environment and discharge in retaliation for exercising Title VII rights, in addition to other conduct, was not extreme and outrageous); Efird v. Riley, 342 F. Supp. 2d 413, 427 (M.D.N.C. 2004) (holding that an alleged "campaign of sexual harassment" followed by discharge in retaliation for

15

complaining about the sexual harassment was not extreme and outrageous); Atkins v. USF Dugan, Inc., 106 F. Supp. 2d 799, 810 (M.D.N.C. 1999) (refusing to find extreme and outrageous conduct when the employer told the plaintiff he was too old and sick and needed to retire).

### 2. Plaintiff has failed to sufficiently allege severe emotional distress.

Plaintiff has failed to allege facts demonstrating that she suffered severe emotional distress. In pertinent part, Plaintiff summarily alleges that she suffered "severe emotional distress." Compl. (# 1, Ex. B) ¶ 41. Plaintiff's bare allegation that she suffered severe emotional distress, without more, is a legal conclusion not required to be accepted as true. See Lamb, 2018 WL 1185508, at *4 (holding that the plaintiff's IIED claim must fail because his bare allegation that he suffered severe emotional distress, without more, was a legal conclusion that the court was not required to accept as true). A plaintiff must make specific allegations regarding the nature of her "severe emotional distress." Holleman v. Aiken, 668 S.E.2d 579, 590 (N.C. Ct. App. 2008); see Johnson v. Ruark Obstetrics, 395 S.E.2d 85, 97 (N.C. 1990) (recognizing that with a negligent infliction of emotional distress claim,[7] the term severe emotional distress refers to any emotional or mental disorder, such as neurosis, psychosis, chronic depression, phobia, or any other type of disabling emotional or mental condition that may be diagnosed by a professional). Accordingly, Plaintiff's IIED claim must be dismissed.

## IV. Conclusion

---

[7] The definition of severe emotional distress set forth in Johnson also applies to IIED claims. Ramsey v. Harman, 661 S.E.2d 924, 926-27 (N.C. Ct. App. 2008).

In light of the foregoing, the Court RECOMMENDS that Defendant's Motion to Dismiss (# 4) be GRANTED, and Plaintiff's Complaint be dismissed.

Signed: May 26, 2018

Dennis L. Howell
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636(b)(1)(C), and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen** (**14**) days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).

17

Case 1:17-cv-00277-MR-DLH    Document 8    Filed 05/29/18    Page 17 of 17